SIMONDS, APPELLANT, *v.* THE REGISTRAR OF HUMACAO, RESPONDENT.

</div>

APPEAL from a Decision of the Registrar of Property Refusing Admission to Record of a Deed of Assignment.

<div align="center">No. 226.—Decided June 23, 1915.</div>

LEASE—ASSIGNMENT OF RENTS—PERSONAL OBLIGATION—REAL RIGHT.—The right of the lessor to recover rents from the lessee is a purely personal obligation between said lessor and lessee and is not a real right; therefore an assignment of said rents is not subject to record in the registry of property.

ID.—CONSTRUCTION OF LAW.—The object of subdivision 5 of article 2 of the Mortgage Law is to protect the interests of the lessee and vests no rights in the lessor.

ID.—RECORD OF LEASE.—By the record of the lease the landlord acquires no right that he did not have before.

ID.—ASSIGNMENT OF RIGHT.—The transfer of a real right of possession must be express and does not follow from the right to receive a particular payment.

ID.—ASSIGNMENT OF RENTS—RIGHTS OF ASSIGNEE—RECORD OF LEASE.—The right of an assignee of instalments of rents to protect himself against other assignees of such instalments does not arise directly from the Mortgage Law and cannot be given because a lease happens to be recorded. An assignee can protect himself, however, by taking a deed from the owner, whether by an assignment of all the real rights of the owner for a limited time or by mortgage or otherwise.

ID.—RISK OF ASSIGNEES—An assignee of instalments of rent must always take a risk of having the lease ended for a condition broken.

The facts are stated in the opinion.

*Messrs. Muñoz & Brown* for the appellants.

Mr. Miguel Planellas, the registrar, did not appear.

MR. JUSTICE WOLF delivered the opinion of the court.

The registrar in this case refused record to an assignment of an instalment of rent for a piece of land substantially on the ground that the right that a lessor has to recover rent of his lessee is a purely personal obligation between such lessor and lessee and is not a real contract, or real right, and therefore not subject to record in the registry of property. The registrar partially relies on the decision of this court in the case of the *Banco Territorial y Agrícola et al.* v. *The Registrar of Caguas,* 19 P. R. R., 983.

Harold I. Sewall, the owner of the farm "San Antonio", leased the same to the Borinquen Sugar Company. The contract of lease was made in a public deed dated March 29, 1911, for a term of fifteen years at an annual rental of $5,500, payable in semi-annual instalments falling due respectively on the 30th of June and 31st of December of each year. In the deed involved in this appeal the said Harold I. Sewall cedes (transfers or assigns) the instalment of rent falling due June 30, 1915.

In the case of the *Banco Territorial y Agrícola* v. *The Registrar of Caguas, supra,* this court held that the transfer to the bank of the right to receive money payable as rent was a purely personal contract and was not an interest in real estate covered by the Mortgage Law. The appellant first seeks to distinguish that case from the present one on the ground that in the former case there was no record of a lease in the registry of property as happens here. He raises the question whether the record of a lease in the registry could take on a real character with regard to one of the parties and not with respect to the other. We may ignore for the

moment the confusion by appellant of the right of an assignee of a single instalment of rent with all the rights of ownership that an owner or a landlord may have, and we shall first examine what is the right created by paragraph 5 of article 2 of the Mortgage Law.

Galindo and Escosura commenting on the said provision of law say:

"In the preamble the reasons are expressed that the commission had in mind to establish this precept which may be resumed in a phrase; to protect the interests of lessees."

The decisions of the General Directorate of Registries of Spain are to the same effect, namely, that the contract of lease may give rise to a real right, always in favor of the lessee. Decisions of April 6, 1891, and December 28, 1892; Odriozola, pages 102-103. The citation made by appellant of the decision of May 20, 1879, does not militate against the theory of the registrar as that decision shows that the record was a limitation to the prejudice of subsequent purchasers. This is only the inverse way of saying that the right is in favor of the lessee. Also the decision of August 30, 1893 (Odriozola, p. 104), shows that the record is a limitation inasmuch as a mother having the administration of a child's estate may not by lease create such a real right as against her child unless a court approves.

By the record of the lease the landlord acquires absolutely no right that he did not have before. He has no enhanced right of reversion, possession, or of receiving the stipulated price for the lease as such price is defined by section 1446 of the Civil Code, nor does he need protection from third persons. His right to recover possession for violation of the contract of lease is as good before the record as it is thereafter. The record protects or aids him not at all. We think it is clear that paragraph 5 of section 2 of the Mortgage Law not only creates no real right in the owner, but no right at all.

Appellant cites articles 30 of the Mortgage Regulations as follows:

"The provisions contained in the fifth paragraph of article 2 of the law, with regard to the entry of leases, shall also be applicable to sublettings, subrogations, transfers, and re-assignments, provided they come within the conditions contained in said paragraph; but in such cases no new record shall be made, but a marginal note opposite the one of the original lease, which had already been made."

As may be seen, that article simply refers to the subsequent transfer of the lease and essentially protects the lessee or subsequent lessees.

It may be noted in passing, even if said article 30 could apply, that it requires that the contracts referred to should partake of all of the characteristics required by said paragraph 5. The assignment here is not for six years, neither is there any agreement for record, nor any other element that makes a contract of lease recordable. There is only a single instalment of rent assigned.

The appellant maintains that the assignee is subrogated to all the rights of the owner, with regard to the instalment of rent transferred. He cites section 1431 of the Civil Code which merely gives to an assignee the benefit of any security that the original owner had. He also refers us, we think mistakenly, to the case of *Godehaux* v. *Bannon,* 44 La. Ann., 253. That case only decides that a purchaser of land has the same right as the original owner. Section 1459 of the Civil Code, which is cited, has no relation to cancellation of records, as appellant maintains. There are several other citations from the Civil Code and from the Mortgage Law, all proceeding on the theory that the assignee of the instalments of rent steps into the shoes of the original owner for all purposes.

The applicable words of the contract before us are as follows: "Mr. Harold Sewall cedes and transfers in favor of Mr. Walter Simonds all his rights and actions that as owner belong to him to receive of the lessee, Borinquen

Sugar Company, the semester of rent of the property described which falls due June 30 of the current year of 1915, subrogating the said assignee in his stead *(en su propio lugar y grado)* to the recovery of said instalment of rent and for the authorization of the corresponding receipt.'' The words do not transfer to Mr. Simonds the right of possession for condition broken that belonged to Mr. Sewall. They merely transfer the personal right of recovery that Sewall had. Sewall has not parted with any of his other rights as owner. The transfer of a real right of possession must be express and does not follow from the right to receive a particular payment.

Appellant also maintains that from the moment that the Mortgage Law separated itself from the doctrine of the Roman law with regard to the contract of rent, one should accept the consequences and scope of the English Common Law to the effect that rents were an incorporeal hereditament of a real character. We have been at pains to find out exactly what was meant by the incorporeal hereditament of rent and have not been successful. But an incorporeal hereditament is a right issuing out of a thing corporate, whether real or personal. 32 Cyc., 659; citing 2 Blackstone's Commentaries, 20. Offices, dignities, franchises, pensions, would all probably be personal. So might rents for all we know to the contrary. The usual incorporeal hereditament attached because of the manner of inheritance, following the law of real estate rather than the law of personal property. Furthermore, the reported cases seem to show that when rents were created as independent of the ownership of the land the owner transferred his entire term and only retained the rights to the reversion. *Van Wicklen* v. *Paulson,* 14 Barbour, 654; *Swan* v. *Inderlied,* 187 N. Y., 372; *Iowa Savings Bank* v. *Frink,* 92 N. W., 916; *Trulock et al.* v. *Donahue,* 40 N. W., 696; 24 Cyc., 126, 128. In any event this case must be governed not by the common law, but by the Civil Code and the Mortgage Law.

The appellant suggests another difficulty. An assignment may be made of rents under a recorded lease and a subsequent purchaser never know anything about such transfer and not have a right to recover rents for the recorded term. We do not need to decide extensively what would be the rights of such a purchaser, but, assuming that the appellant is right, then such a purchaser has exactly the same rights and the same duties that any purchaser of land has in the United States. A purchaser there buys subject to a lease and is bound to make inquiries as to the existence and conditions of such lease. For a misrepresentation as to the condition of the lease, his remedy is against the original owner or for a rescission. The purchaser under such circumstances must beware. If the appellant is right, he as assignee need have no fear of future purchasers. In truth, however, the real object of an assignee would be to protect himself from subsequent assignments of the same instalment of rent  The right of an assignee of instalments of rent to protect himself against other assignees of such instalments does not arise directly from the Mortgage Law and cannot be given because a lease happens to be recorded. An assignee can, however, protect himself by taking a deed from the owner, whether by an assignment of all the real rights of the owner for a limited time or by mortgage or otherwise.

What would be the position under a recorded lease if the rent was payable in instalments, as here, and each of the instalments was sold or assigned to a different person? Appellant's contention apparently is that each of them would have a right to recover possession for condition broken. There are other possible suppositions. The receiver of the Borinquen Sugar Company might decide to surrender his lease and the owner, Mr. Sewall, might accept the surrender pending any instalment of rent. The real owner and lessee of a recorded lease could always agree to terminate the contract. The assignee of instalments of rent must always take a risk of having the lease ended for a condition broken.

It is needless to multiply instances. We think that the lease before us conveyed only a personal right to a single instalment of rent, and that the case cannot be distinguished from *Banco Territorial y Agrícola* v. *Registrar of Caguas, supra.* The note must be

*Affirmed.*

Chief Justice Hernández and Justice Aldrey concurred. Justices del Toro and Hutchison dissented.